## WAITE v. CITY OF SANTA CRUZ.

(Circuit Court, N. D. California. August 3, 1896.)

### No. 12,094.

1. MUNICIPAL BONDS, SUITS ON—JURISDICTION AT LAW.
   The fact that municipal bonds are payable out of a special fund, known as a "sinking fund," does not prevent the holder from maintaining an action at law thereon to enforce collection.
2. SAME—CONSTITUTIONAL LAW—SPECIAL LAWS.
   The California act of March 1, 1893, amending the act of March 15, 1883, authorizing towns and cities to refund their indebtedness and issue bonds therefor, is not unconstitutional, as special and local legislation, merely because it excludes cities of the first class from its privileges.
3. PLEADING AND PRACTICE—DECISIONS ON DEMURRER.
   The court will not decide, on demurrer to the complaint, questions which are more properly presented after answer, or questions depending upon facts as to which there is an ambiguity on the face of the complaint.

This was an action at law by Albert H. Waite against the city of Santa Cruz to recover upon certain municipal funding bonds. The case was heard on demurrer to the complaint.

Chickering, Thomas & Gregory, for plaintiff.

Lindsay & Cassin and J. G. Maguire, for defendant.

McKENNA, Circuit Judge (orally). This is an action to recover interest on certain bonds issued by the city of Santa Cruz under act of March, 1893, which authorizes cities other than those of the first class to refund their indebtedness. The complaint alleges:

The incorporation of the city of Santa Cruz, and that it is a city of the fifth class. That on the 13th day of March, 1894, it had an outstanding indebtedness of $360,000, evidenced by bonds, and on said day the assessed valuation of all taxable real estate and personal property was $3,907,404. That a proposition to refund its indebtedness was submitted to an election, and carried, and, in pursuance thereof, an ordinance was passed refunding said indebtedness. That all acts, conditions, and things required by law to be done precedent to the issue of the bonds and coupons hereinafter mentioned were properly done, and approved in legal and due form, as prescribed by law. That on the 16th day of April, 1894, the mayor and clerk of said city, being duly authorized so to do, executed 360 bonds or obligations in the sum of $1,000 each, in gold coin of the United States, bearing interest in like gold coin at the rate of 5 per cent. per annum, said interest being payable annually. That said bonds were of the character known as "serials," one-fortieth of the principal thereof, to wit, the sum of $9,000, being payable annually on the 15th day of April, together with interest on all outstanding bonds. That said bonds were numbered consecutively from 1 to 360, both inclusive, and were divided into 40 series, consisting of 9 bonds each. That the first series included the bonds numbered from 1 to 9, both inclusive, and each succeeding series included the 9 bonds numbered consecutively after those included in the next preceding series. That the bonds included in the first series were

made payable on April 15, 1895, and the remaining series were made payable in consecutive order on the 15th day of April in each succeeding calendar year thereafter until and including the year 1934. That to each of said bonds were attached interest coupons equal in number to the number of years which the bond had to run before its maturity, executed by the defendant, through its mayor and city clerk, thereunto duly authorized. That the nine bonds comprising the said first series were in the words and figures following, to wit:

"Number                                                    Dollars
"————.                                                    $1,000.

"United States of America. State of California. Bond of the City of Santa Cruz. Refunding Gold Bond. Five per cent. Series 1.

"The city of Santa Cruz, a municipal corporation, in the county of Santa Cruz, state of California, is indebted to, and promises to pay, the bearer, for value received, the sum of one thousand dollars ($1,000), gold coin of the United States, on the 15th day of April, A. D. 1895, with interest thereon, in like gold coin, at the rate of five (5) per cent. per annum, payable annually on the 15th day of April of each calendar year from the date hereof, at the office of the city treasurer of said city of Santa Cruz, on presentation and surrender of the proper interest-bearing coupon hereto attached. And for the payment of the principal sum herein named, and the interest accruing thereon, the said city of Santa Cruz is held and firmly bound, and its faith and credit, and all the real and personal property of said city, are hereby pledged for the prompt payment of this bond and interest at maturity. This bond is one of a series of bonds of like date, tenor, and effect, issued by the said city of Santa Cruz, for the purpose of refunding the bonded indebtedness of said city, and issuing bonds therefor, and providing for the payment of the same under and in pursuance of and in conformity with the provisions of an act of the legislature of the state of California, entitled 'An act to amend an act entitled "An act authorizing the common council, board of trustees or other governing body of any incorporated city or town, other than cities of the first class, to refund its indebtedness, issue bonds therefor, and provide for the payment of the same" (approved March 15th, 1883),' approved March 1st, 1893. And in pursuance of and in conformity with the constitution of the state of California and the ordinance of the city of Santa Cruz, and in pursuance of and in conformity with a vote of more than two-thirds of all the qualified electors of said city of Santa Cruz, voting at a special election duly and legally called and held and conducted in said city as provided under said act, on Tuesday, the 13th day of March, 1894, notice thereof having been duly and legally given and published in the manner as required by law, and after the result of said election had been canvassed, found and declared in the manner and as required by law. And it is hereby certified and declared that all acts, conditions, and things required by law to be done precedent to and in the issue of said bonds have been properly done, happened, and performed in legal and due form, as required by law. This bond ceases to bear interest when due, unless presented for payment. In testimony whereof the said city of Santa Cruz, by its mayor and common council, has caused this bond to be signed by the mayor of said city of Santa Cruz, and attested by its said clerk, with the seal of said city attached, this sixteenth day of April, A. D. one thousand eight hundred and ninety-four.

"[Seal]                                    Wm. T. Jeter,
                                 "Mayor of the City of Santa Cruz.

"Attest: O. J. Lincoln,
              "City Clerk.

"(Indorsed:)                                            Number ————.
"State of California. The City of Santa Cruz. 1,000 Dollars Refunding Five per cent. Gold Bond.
"$1,000.                                                 $1,000.
"Series 1. Interest payable annually April 15th. Principal due April 15th, 1895.
"(Surcharged on face of bond:)  $1,000."

—That the 351 bonds comprising the other 39 series were in the same words and figures, save and except the number of the bond, and the date of the maturity thereof. That the coupons maturing on April 15, 1895, attached to each of the 360 bonds aforesaid, were in the words and figures following, to wit:

"$50.00.                                                                        $50.00

"The city of Santa Cruz will pay to bearer hereof on the 15th day of April, 1895, at the office of the city treasurer of said city, fifty dollars, gold coin of the United States, for interest on refunding bond issued 16th day of April, A. D. 1894.                                              Wm. T. Jeter,
"No. ———.                                          Mayor of the City of Santa Cruz.
                                                                        "O. J. Lincoln,
                                                                            "City Clerk."

"(Surcharged on face of coupon:) 1."

—That before the delivery of the said bonds and coupons, as hereinafter alleged, the said defendant made provision for the collection of an annual tax sufficient to pay the interest on the same as it should fall due, and also provision to constitute a sinking fund for the payment of the principal thereof as it should fall due. That said bonds and coupons were and are in the form described in the said notice of the special election of March 13, 1894. That on or about the 13th day of April, 1894, the said defendant, by its officers thereunto duly authorized, for value received, delivered the said 360 bonds, with the coupons thereunto attached, to one Walter Stanton, who afterwards, and before the maturity thereof, sold and delivered to the plaintiff herein the 9 bonds of the first series numbered from 1 to 9, both inclusive, and 282 of the coupons maturing on April 15, 1895. That the said coupons so sold and delivered were the coupons attached to and issued with the bonds bearing the following numbers, to wit, Nos. 1 to 14, 21 to 63, 69 to 182, 184 to 188, 201 to 207, 233 to 243, 245 to 252, 276 to 288, and 294 to 360, each inclusive. That the said plaintiff ever since has been, and now is, the lawful owner and holder of the said 9 bonds and the said 282 coupons. That on the 5th day of May, 1895, said plaintiff presented for payment, at the office of the city treasurer of said defendant, the 9 bonds and the said 282 coupons, offering to surrender said bonds and coupons upon payment of the same. That the said city treasurer of the said defendant wholly refuses to pay said bonds, or the coupons, so presented, or either or any of them, and still refuses to pay the same. That no part of said bonds, or of the interest due thereon, has been paid, and that there is now due and unpaid to the plaintiff on said bonds and coupons the sum of $23,100 in gold coin of the United States, with interest thereon from the said 15th day of April, 1895.

The defendant has demurred to the complaint of the plaintiff, urging: (1) That the plaintiff has mistaken his remedy; that he has no cause of action at law, because the complaint shows that the bonds and interest are payable only out of a special fund. (2) That the statute of 1893, under which the bonds were issued, is unconstitutional, because it is special and local, inasmuch as it excludes cities of the first class from its privileges. (3) That the complaint shows that the issue of bonds was illegal, because in ex-

cess of the bonded indebtedness which the city could contract under the law. (4) That the refunding act did not authorize the issuance of bonds. (5) That the bonds were not executed by the city of Santa Cruz, because they were not signed by the city, but only by William T. Jeter, mayor of the city, and by O. J. Lincoln, city clerk.

The questions involved in all these propositions are close ones, but I do not think the first, second, fourth, and fifth can be sustained; the first and second, as being against the weight of authority, the fourth and fifth not coming up on demurrer. In other words, the latter two would be more properly presented after answer. Against the third proposition, to wit, that there was an excessive and illegal issue of bonds, the complainant urges the recitals of the bonds. On the controversy hence arising a great many cases have been cited, which I have carefully studied. I have come to no confident conclusion. Indeed, the contention of defendant is not with certainty presented by the bill. Assuming that there was a limitation of the power of the city dependent upon the existence of certain conditions of fact, the knowledge of the takers of the bonds of the existence of such conditions is not clearly apparent from the bill, and I am, therefore, reluctant to base a decision on a question of law unless there can be no ambiguity about the facts. The effect of recitals in a bond has been explained and decided in a number of cases in the supreme court of the United States. It is not necessary to review them all. Generally it may be said that a bona fide holder of bonds is protected by the recitals. In Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 217, it was held that:

"A statement in the bond of a municipal corporation that it is issued under the provisions of the act, * * * and in conformity with its provisions; that all the requirements of law have been fully complied with; that the total amount of the issue does not exceed the limits prescribed by the constitution of that state; and that the issue of the bonds had been authorized by a vote of a majority of the duly-qualified electors of the county voting on the question at a general election duly held,—estops the county, in an action by an innocent holder for value to recover on coupons of such bonds, from denying the truth of these recitals. When there is an express recital upon the face of a municipal bond that the limit of issue prescribed by the state constitution has not been passed, and the bonds themselves do not show that it had, the holder is not bound to look further."

But in Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, affirmed in Chaffee Co. v. Potter, it was held, as was said in the latter case:

"That the county was not estopped from pleading the constitutional limitation, because there was no recital in the bonds in regard to it, and because, also, the bonds showing upon their face that they were issued to the amount of $500,000, the purchaser, having that data before him, was bound to ascertain from the records the total assessed valuation of the taxable property of the county, and determine for himself, by a simple arithmetical calculation, whether the issue was in harmony with the constitution; and that the bonds, having been issued in violation of that provision of the constitution, were not valid obligations of the county."

Again, the court said: "The test is, what does each individual bond disclose?" This test, applied literally to the bonds sued on, would make their recitals conclusive; but it appears from the bill

that 360 bonds were authorized in the sum of $1,000 each; that they were of the character known as "serials," and were numbered consecutively from 1 to 360, and were divided into 40 series, and contained the recitals already mentioned; that on or about the 13th of April, 1894, the defendant, by its officers thereunto duly authorized, for value received, delivered the said 360 bonds, with the coupons attached, to one Walter Stanton, who, afterwards, and before the maturity thereof, sold and delivered to the plaintiff herein the 9 bonds of the first series, numbered from 1 to 9, both inclusive, and 282 of the coupons maturing on April 15, 1895; that the said coupons so sold and delivered were the coupons originally attached to and issued with the bonds of certain numbers scattered from 1 to 360, heretofore referred to. It is claimed by the defendant that a fair inference from these averments is that plaintiff knew of the excess of the issue, and hence is not a bona fide purchaser. But it certainly does not necessarily follow, and, as there is ambiguity, I do not care to base an opinion upon it, but will reserve it until the answer is filed. The demurrer is overruled.